**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALEXIS OLIVARES,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Civil Action No. 15-7761 (ES)

OPINION

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Alexis Olivares ("Plaintiff") seeking review of Administrative Law Judge Richard West's ("ALJ" or "ALJ West") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), respectively. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Court vacates ALJ West's decision and remands the case for further proceedings consistent with this Opinion.

**I.    BACKGROUND**

On September 26, 2011, Plaintiff filed a Title II application for DIB, alleging disability beginning April 26, 2011. (D.E. No. 7, Administrative Record ("Tr.") at 28). Plaintiff also filed a Title XVI application for SSI on February 28, 2013, again alleging disability beginning April 26, 2011. (*Id.*). The claim was initially denied on November 15, 2011, and denied again upon reconsideration on April 30, 2012. (*Id.*). Plaintiff subsequently filed a request for a hearing in

1

front of an Administrative Law Judge on June 28, 2012. (*Id.*). Plaintiff's request was granted, and Plaintiff appeared and testified at a hearing on January 14, 2014. (*Id.*).

At the hearing, Plaintiff testified that he was involved in a motor vehicle accident on September 25, 2007, causing him to be disabled, and ultimately leading to his termination from his employment as a forklift operator. (*Id.* at 49-52). Plaintiff complained of lower back pain radiating down his right leg, numbness and tingling, panic attacks, and depression. (*Id.* at 48-56). Plaintiff testified that these stated impairments prevented him from being able to continue working as a forklift operator. (*Id*. at 52-53).

On May 22, 2014, ALJ West denied Plaintiff's application, finding that Plaintiff "has not been under a disability within the meaning of the Social Security Act from April 26, 2011," through the date of ALJ West's decision. (*Id*. at 25-28). Plaintiff requested an Appeals Council review, which was denied on August 25, 2015, rendering ALJ West's decision final. (*Id.* at 1-6).

On October 29, 2015, Plaintiff appealed the Commissioner's decision by filing a Complaint with this Court. (D.E. No. 1, Complaint ("Compl.")). The parties briefed the issues raised by Plaintiff's appeal. (*See* D.E. No. 11, Brief in Support of Plaintiff Alexis Olivares ("Pl. Br."); D.E. No. 14, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Br.")). The matter is now ripe for resolution.

## II.     LEGAL STANDARD

### A. Standard for Awarding Benefits

To be eligible for DIB under Title II and SSI under Title XVI of the Act, a claimant must establish that he is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c). Disability is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." *Id.* § 423(d)(1)(A). A claimant's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The Act has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner finds that a claimant is or is not disabled, the appropriate determination is made and the inquiry ends. *Id.* The burden rests on the claimant to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, the burden shifts to the Commissioner. *Id*.

***Step One.*** At step one, a claimant must demonstrate that he is not engaging in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. *Id.* §§ 416.972(a), (b). If a claimant engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. *Id.* § 404.1520(b). If a claimant demonstrates he is not engaging in substantial gainful activity, the analysis proceeds to the second step.

***Step Two.*** At step two, a claimant must demonstrate that his medically determinable impairment or the combination of his impairments is "severe." *Id.* § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. *Id.* § 404.1520(c). Slight abnormalities or minimal effects on a claimant's

3

ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

***Step Three.*** At step three, an ALJ must assess the medical evidence and determine whether a claimant's impairment or combination of impairments meets or medically equals an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that a claimant meets or medically equals a listing, a claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 416.920(d).

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." *Id.* § 404.1527(c)(2). "Not inconsistent" does not mean that the opinion must "be supported directly by all of the other evidence [i.e., it does not have to be consistent with all the other evidence] so long as there is no other substantial evidence that contradicts or conflicts with the opinion." *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion

4

outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

*Step Four.* If a claimant is not found to be disabled at step three, the analysis continues to step four, in which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If a claimant lacks the RFC to perform any work he has done in the past, the analysis proceeds. *See id.* § 416.920.

*Step Five.* In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his RFC and vocational factors. *Id.* § 404.1520(a)(4)(v).

### B. Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360.

Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### III. ALJ WEST'S DECISION

At step one of the analysis, ALJ West determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since April 26, 2011, the alleged onset date. (Tr. at 30).

At step two, ALJ West found Plaintiff suffered from the following severe impairments: degenerative disc disease with status post L4-5 discectomy; lumbar radiculopathy; obesity; and an affective disorder. (*Id.*). ALJ West considered these impairments to be severe because when "considered either individually or in unison, [the impairments] significantly limit the [Plaintiff's] mental and physical abilities to do one or more basic work activities." (*Id.*).

At step three, ALJ West found that Plaintiff did not "have an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.* at 31). The ALJ recognized that, while Plaintiff suffered from lumbar radiculopathy, "the medical evidence does not establish the

requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under listing 1.04." (*Id.*). Furthermore, the ALJ noted that there was no evidence that Plaintiff's back disorder "resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b)." (*Id.*). Additionally, the ALJ notes that he "fully considered [Plaintiff's] obesity in the context of the overall record evidence in making this decision." (*Id.*). Finally, the ALJ considered Listing 12.04, but found Plaintiff's mental impairment does not meet or medically equal the criteria outlined in the Listing because "[Plaintiff's] mental impairment does not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation" as required in Listing 12.04(B). (*Id.* at 31-32).

At step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the exception that Plaintiff is limited to performing all postural activities only occasionally. (*Id.* at 32). In considering the RFC determination, Plaintiff was found to be unable to perform any past relevant work. (*Id.* at 35).

At step five, the ALJ determined that, based on the Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (*Id.* at 36). Accordingly, ALJ West found that Plaintiff was not disabled, as defined by the Act, and was therefore ineligible for DIB and SSI. (*Id.* at 37).

## IV. DISCUSSION

On appeal, "Plaintiff asserts that substantial evidence exists in the administrative record to support a finding of disability." (Pl. Br. at 1). Plaintiff specifically appeals the ALJ's findings at steps three, four, and five. (*Id.* at 17-42). Plaintiff contends (among other things) that (i) the ALJ failed to consider Plaintiff's impairments in combination as required in the step-three analysis (*id.* at 17-25); (ii) the RFC determination was not based on substantial evidence (*id.* at

25-34); and (iii) the Commissioner did not carry its burden at step five (*id.* at 34-42). Plaintiff asks the Court to reverse the decision of the Commissioner or, in the alternative, remand this case to the Commissioner for a new hearing and decision. (*Id.* at 1).

**A. The ALJ failed to consider Plaintiff's impairments in combination**

Plaintiff argues that in his step-three analysis, ALJ West failed to consider "the combination of Plaintiff's severe physical conditions." (*Id.* at 17). Plaintiff contends that the decision by the ALJ "offers no case-specific analysis by combining all medical impairments with [Plaintiff's] obesity," which the ALJ determined to be a severe impairment at step two. (*Id.* at 23). Although ALJ West states that he "fully considered obesity in the context of the overall record evidence in making this decision" (Tr. at 31), Plaintiff asserts that this broad overview of ALJ West's consideration does not sufficiently satisfy the requirements of step three (*see* Pl. Br. at 25).

Defendant responds that "[t]here is no doubt that the ALJ considered Plaintiff's impairments in combination" where the ALJ "found that [Plaintiff's obesity] was not attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the listings found in any musculoskeletal, respiratory, or cardiovascular body system listing affected by obesity." (Def. Br. at 9-10).[1] Defendant further counters that Plaintiff failed to "persuasively demonstrate how further articulation regarding his obesity would have changed the outcome of the ALJ's decision." (*Id.* at 10).

At step three of the analysis, the claimant bears the burden of proving that his impairments, whether individually or in combination, equal or meet those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). However, "if a claimant's

---

[1] Tellingly, Defendant's summary of the ALJ's decision notes that "the ALJ determined that Plaintiff's impairments were not of listing-level severity," but makes no mention of the ALJ's consideration of Plaintiff's impairments in combination. (*See id.* at 6).

8

impairment does not match one listed in Appendix 1, the ALJ is required to perform a comparison between the claimant's impairment(s) and those listed in Appendix 1." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151-52 (3d Cir. 2008). The Third Circuit has stated that step three requires the ALJ to perform "an analysis of whether and why [the claimant's individual] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett*, 220 F.3d at 119. The ALJ is "not require[d] . . . to use particular language or adhere to a particular format in conducting his analysis"; rather, there must be "a sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. Furthermore, the Third Circuit has recognized that the elimination of obesity as a listed impairment in Appendix 1

> did not eliminate obesity as a cause of disability. To the contrary, the Commissioner promulgated SSR 00-3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a Listed Impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

To satisfy this individualized inquiry, an ALJ "must meaningfully consider the effect of a claimant's obesity, individually and in combination with [his] impairments, on [his] workplace function at step three and at every subsequent step." *Id.* at 504. In *Diaz*, the Third Circuit found the ALJ's citation of reports by doctors who were aware of Diaz's obesity insufficient to meet this requirement. 577 F.3d at 504. The Third Circuit stated, "[w]ere there *any* discussion of the combined effect of Diaz's impairments, we might agree with the District Court. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." *Id.* & n.3 (emphasis in original) (collecting cases reaching a similar conclusion).

Here, the ALJ considers Plaintiff's lumbar radiculopathy with regard to Listing 1.04, Plaintiff's obesity, and Plaintiff's affective disorder with regard to Listing 12.04 individually, but fails to consider the impairments in combination despite being required to do so. *See Burnett*, 220 F.3d at 119 (holding that the ALJ is required to set forth the reasons for his decision); *Diaz*, 577 F.3d at 504. Indeed, the ALJ states he "fully considered obesity in the context of the overall record evidence in making this decision"; but this is merely a conclusory statement. (Tr. at 31). And conclusory statements, like the one in this case, are "beyond meaningful judicial review." *Burnett*, 220 F.3d at 119; *see also Diaz*, 577 F.3d at 504 (same). Aside from the ALJ's brief consideration of Plaintiff's impairments individually, ALJ West fails to outline how the impairments were considered in combination when determining if Plaintiff medically equals one of the listed impairments in Appendix 1.

Defendant argues the ALJ "found that [Plaintiff's obesity] was not attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the listings found in any musculoskeletal, respiratory, or cardiovascular body system listing affected by obesity." (Def. Br. at 9). The Court, however, does not read the ALJ's statement—that he "fully considered obesity in the context of the overall record evidence in making this decision"—to equate to such an explanation of his consideration of Plaintiff's obesity in combination with his other severe impairments. (Tr. at 31).[2] Furthermore, Defendant's argument that Plaintiff failed to "persuasively demonstrate how further articulation regarding his obesity would have changed the outcome of the ALJ's decision" (Def. Br. at 10) is inapplicable where Plaintiff meets his burden. Indeed, Plaintiff contends that, had the ALJ considered his

---

[2] Defendant further contends that "[n]o medical source has indicated that Plaintiff's obesity has caused any functional limitations required to meet or medically equal a listing." (Def. Br. at 10). But Defendant's argument fails to address the issue at hand regarding the ALJ's failure to consider the Plaintiff's obesity in combination with his other severe impairments.

10

obesity in combination with his "disc disease, radiculopathies and poly-neuropathies," his obesity may have "increased the severity and functional limitations of those impairments." (*See* Pl. Br. at 25).

Moreover, Defendant relies on *Vargas v. Colvin* in support of the argument that the ALJ's consideration of Plaintiff's obesity, while minimal, was sufficient due to a lack of medical evidence supporting Plaintiff's contention that his obesity caused any limitations meeting or equaling one of the listed impairments. (*See* Def. Br. at 10 (citing No. 15-2502, 2017 WL 123436, at *5 (D.N.J. Jan. 11, 2017))). But in *Vargas*, the ALJ discussed the listings and the fact that the plaintiff's obesity, considered in combination, did not meet or equal the requirements of the listed impairments. *See* 2017 WL 123436, at *5 ("[T]he ALJ considered this impairment and found that [plaintiff's] obesity was not 'attended with the specific clinical signs and diagnostic findings to meet or equal the requirements set forth in the listings found in any musculoskeletal, respiratory, or cardiovascular body system listing affected by obesity.'"). Here, ALJ West did no such analysis. Had the combination analysis occurred, even briefly, the Court might agree that Plaintiff's impairments, when considered in combination, would not meet or medically equal one of the listed impairments. *See, e.g.*, *Diaz*, 577 F.3d at 504 (holding that "[w]ere there any discussion of the combined effect . . . we might agree with the District Court. However, absent analysis of the cumulative impact of [Plaintiff's] obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function.").

Accordingly, the Court remands this case so that the ALJ can complete the step-three analysis. In doing so, the ALJ should address the combined effects of Plaintiff's individual impairments and detail whether the combination of all of Plaintiff's impairments is equivalent in

11

severity to a listed impairment.  Pending the outcome of the combination analysis at step three, the ALJ should reconsider his determinations at steps four and five.

## V.     CONCLUSION

For the foregoing reasons, the Court hereby vacates ALJ West's decision and remands the case for further proceedings consistent with this Opinion.  An appropriate Order accompanies this Opinion.

<u>s/ Esther Salas</u><br>
**Esther Salas, U.S.D.J.**